Sherman v. The Western Stage Company.

———

SHERMAN v. THE WESTERN STAGE COMPANY.

1. Limitation, statute of: WHEN IT BEGINS TO RUN: ADMINISTRATOR. Where a cause of action accrues to *the estate* of a decedent instead of to the deceased while living, the statute of limitation will not commence to run until the appointment of an administrator. But if the statute has once begun to run in the life-time of the party entitled, it is not interrupted by his subsequent death, but continues,

and the cause of action *survives,* not accrues, to the personal representative.

2. —— INJURY. Where an act or omission causes a direct injury, an action may be instantly maintained, and the statute begins to run from the time the act was done, without regard to any actual damages or to any knowledge of the party injured, and is not suspended by his subsequent death.

3. —— RULE APPLIED. The plaintiff's intestate was thrown from a boat capsized in crossing a swollen stream in the line of route, and by reason of the negligence, of the defendants, who were common carriers operating a line of stage coaches, and, after some ten minutes of struggling to save herself, was drowned: *Held,* per COLE, J., that the cause of action accrued to the deceased, and that the statute began to run from the time she was thrown from the boat, instead of from the appointment of her administrator; per WRIGHT, J., and DILLON, Ch. J., that the death in the present case comes within what is generally and legally understood as an instantaneous death, and that the interval of time between the injury and the death was so brief as that the statute did not begin to run in the life-time of the deceased, nor until the appointment of an administrator.

4. —— STATUTE CONSTRUED: COMMON LAW RULES. The provisions of our statute (Rev. §§ 2748, 4111) do not change the following common law rules of construction of statutes of limitation: First, that the statute begins to run from the time the cause of action accrues. Second, that if the statute once begins to run, no subsequent disability will suspend it unless the statute itself provides therefor. Third, that before a cause of action accrues or the statute begins to run, there must exist a cause of action, and a person authorized to prosecute it, as where a cause of action accrues to the estate of a deceased, the statute will not commence to operate until the appointment of an administrator.

5. New trial: CONFLICTING EVIDENCE. Where a question upon which there is a conflict of evidence is peculiarly within the province of the jury to decide, their finding thereon will be regarded as conclusive.

6. Negligence: TORTS: MUTUAL NEGLIGENCE. Where the negligence of a party injured contributed directly to the injury, he cannot recover; nor where there has been mutual negligence, and the negligence of each party was the proximate cause of the injury.

7. —— PARAMOUNT NEGLIGENCE. While the general rule upon the subject of negligence, above given, is recognized, yet the defendants in the present case, by placing the plaintiff's intestate in the boat,

under the circumstances disclosed by the testimony, cannot avail themselves of the imputed want of care, negligence, or conduct on her part while in the boat, to defeat a recovery for the injury resulting from defendant's primary and paramount negligence in causing her to be put therein. COLE, J., dissenting.

8. Damages: DEATH FROM INJURY: ACTION. Under our statute (section 4111 of the Revision) the right of action for a wrongful act producing death is in favor of, and the damages recovered accrue to *the estate* of the deceased, and not to his *next of kin.*

9. —— EXEMPLARY. Whether exemplary damages are allowed in an action brought by an administrator, for damages resulting to the estate, from the death of his intestate caused by the wrongful act of the defendant, — *quere.*

10. —— EXCESSIVE DAMAGES: REMITTITUR. In such an action, eight thousand dollars awarded by the court below, was regarded as excessive to the extent of three thousand dollars, which the plaintiff offering to remit, judgment was rendered for the residue.

## *Appeal from Linn District Court.*

### SATURDAY, MAY 16.

THIS action is brought by the plaintiff, Charles A. Sherman, as administrator of his deceased wife, Terzah Sherman, to recover damages for the death of his wife, produced, as he alleged, by the careless, negligent and wrongful acts of the employees of the defendant. The facts of the case are briefly, in substance, that the defendant is a corporation and a common carrier of passengers and their baggage by means of wagons, hacks and coaches over various lines and routes in this State. In April, 1862, the plaintiff's wife, Terzah Sherman, his infant daughter, Kate M. Sherman, and his mother, Julia Sherman, took passage in defendant's hack from Des Moines to Fort Dodge. They reached Boonsboro at the close of the first day, and staid over night. On the next morning, as they were being seated in the hack or vehicle, the driver, an employee of defendant, was very rude and

discourteous to them. The roads were very muddy and bad; the streams were much swollen. On arriving at Boone river, about twenty miles from Fort Dodge, it was found to be at such stage of water as to render the fording of it dangerous, if not wholly impracticable. There was no bridge across the stream at the usual and regular place of crossing, nor for several miles in either direction. This stream had not been fordable for several weeks, and the mails, passengers and baggage had, by procurement of defendant's agent, been carried across daily, during that time, in a skiff, owned and operated by a person living on the river near that point; and the hacks of the defendant met at the river, and, exchanging loads, returned.

As the hack containing the plaintiff's wife, child and mother arrived at the Boone river, the hack and driver of the defendant were upon the other side to receive and carry the mail and passengers on to Fort Dodge. The owner of the skiff sent his son, aged about sixteen years, with it, to ferry the mail and passengers over the river. There were no other passengers than the wife, child and mother of the plaintiff; they had two trunks and there were also two mail-bags. All these were put in the skiff, the driver of the defendant, who had brought them there taking part in and directing the manner of loading, and the driver who was to receive them insisting that all should be taken at one load so as to avoid delay. The passengers were seated in the skiff, as directed by the drivers, and the boy, who was to row the skiff, except that the boy testifies to his requesting the plaintiff's wife, who was holding her child in her arms, to take a low seat, just in rear of the oarsman's seat, which she did not do, but seated herself on a trunk near the seat, but much higher than it. One trunk and the three passengers were in the stern of the boat, and the trunk and two mail-bags

were forward of the oarsman. The skiff was from sixteen to eighteen feet long, four to five feet wide, about eighteen inches deep and well shapen, being pointed forward and narrow at the stern and flaring at the sides. When all the loading was in, the sides of the skiff were about six inches above the water.

At the place of loading, the water was still, and there was not any current until about two-thirds of the way across. There was no indication of danger until the boat struck the current, which it did nearly at a right angle, and there it dipped water and one of the mail-bags fell overboard. In his effort to recover the mail-bag, the oarsman lost one of his oars, and becoming frightened was unable to manage the boat, and as it floated down the current it struck a snag and threw out the oarsman and the three passengers. The oarsman, though unable to swim, found no difficulty in wading to the shore. The three passengers floated down the river, struggling to save themselves, and in sight of the persons on the shore, for a considerable distance, but finally sunk and were drowned. One or more persons on the shore, as well as the oarsman, made vigorous but unsuccessful efforts to save them. The defendant's drivers made no efficient or active effort. The mother of plaintiff was gotten out of the stream by the oarsman, in about fifteen minutes, but the plaintiff's wife and child, who were thrown from the boat and went down together, were not found or taken from the stream for an hour or more. All were dead.

The oarsman, who was made a witness by both parties, testifies, that the boat was made to dip water by the movement of the plaintiff's wife to the upper side of the boat just as it struck the current, and that her movement had a much greater effect upon the boat by reason of her being seated on top of the trunk instead of on the low seat he directed her to occupy. Two other witnesses,

present at the loading, testify that they did not hear the direction to take the low seat, nor observe the movement to the upper side of the boat, as testified to by the oarsman.

In March, 1866, nearly four years after the casualty, the plaintiff was appointed administrator of the estate of his deceased wife, and as such commenced this suit immediately thereafter.    He claims twenty-five thousand dollars damages.

The defense resolves itself into three propositions: First, that the claim is barred by the statute of limitations; second, that the person in charge of the skiff was not the servant or employee of the defendant, so as to render defendant liable for his acts or negligence; third, that the conduct of the deceased contributed directly to the accident and her consequent death.    There was a trial to a jury, which resulted in a verdict of eight thousand dollars for plaintiff.    A motion for a new trial being overruled, and judgment entered upon the verdict, the defendant appeals.

*J. M. Elwood,* and *Finch, Clark & Rice,* for the appellant.

From the numerous points made in the printed argument of appellant's counsel, the following are extracted and condensed:

I. The action is barred by the statute of limitations.

1. Within the letter and spirit of the statute this is indisputably an action for an injury to the person. Rev. § 2740, sub. 1.

And this court in giving construction to the section so decided in the recent case of *Sherman* v. *The Western Stage Co.*, 22 Iowa, 556.

2. It being an action for an injury to the person,

the remedy is barred in two years. Rev. § 2740, sub. 1; *Sherman* v. *The Western Stage Co., supra.*

These two propositions show that the statute of limitations bars the right of the plaintiff to recover in the action, unless, under the circumstances attending the case, some section of the statute, or some rule of law, takes it out of the operation of the limitation act.

It is, indeed, claimed by the plaintiff that this is so, that the statute did not attach or begin to run until the appointment of the administrator, and that, therefore, his right to maintain this action continues for two years from the time of such appointment. It is undeniable that there is a class of authorities which seem to favor this position. But the cases are by no means uniform. The following are some of the authorities which are regarded as sustaining the position of the plaintiff: *Murray's Admrs.* v. *The East India Co.* (5 Barn. & Ald. 204); *Admrs. of McCullough* v. *Sheel* (3 McCord [S. C.] 455). An inclination to hold a contrary rule is apparent in *Frost* v. *Frost* (4 Edw. Ch. 733); *Blakemore* v. *Canal Co.* (3 Exch. [Young & Jervis] 60); *People* v. *White* (11 Ill. 341); *Rhoads* v. *Smethurst* (4 Mees. & Wels. 42).

We believe that all the cases holding that the statute does not begin to run until the appointment of an administrator, are based upon the reason that, until the appointment of an administrator, there was never any cause of action or remedy complete in any person. No one ever had the right to an action. There was no person in existence who could commence it legally. But these cases can have no application, except where the cause of action arose, and the remedy attached or inured after the death of the testator or intestate. If the remedy — the right to maintain the action — was complete in his lifetime, then as a matter of course the statute began to run, from the time such right accrued, and having commenced

to run as against the testator or intestate, nothing, not even his death, could suspend its operation.

. The cases relied upon, therefore, can not be regarded as authority bearing upon the present case if it shall appear that a remedy — a legal right to the cause of action — was perfect and complete in the intestate before her death. If the act producing or causing the injury to her did not occasion her instant death, but she survived even only for a short space of time, her right to a legal remedy arose and existed during her life-time. The legal right to sue attached and became perfect and complete. No legal disability stood in the way of an action for the injury to her, and from necessity the statute began to run.

We submit then, third, that a complete and perfect cause of action for the injury which resulted in her death accrued to the intestate during her life-time, and that consequently the statute began to run before her death.

1. The evidence shows that she survived the upsetting of the skiff for several minutes — that she floated down the current above the water for some distance before she sunk.

2. The rule is well settled that in cases of tort the statute begins to run from the moment of the act or negligence which occasions the injury. When the act or omission causes direct and immediate injury the action accrues and the statute begins to run from the moment of the nonfeasance or misfeasance, and not from the time when the damages result — from the time of the injury — and not when death resulting from it ensues. Redfield on Railways, § 172, p. 396, sub. 8; 2 Greenleaf's Evidence, § 433, p. 430; *Howell* v. *Young*, 2 Car. & P. 238; *Short* v. *McCarty*, 3 Barn. & Ald. 626; *Battley* v. *Faulkner*, id. 288; *Roberts* v. *Read*, 16 East. 215; *Brown* v. *Howard*, 2 Brod. & Bing. 72; *Blakemore* v. *Canal Co.*, 3 Exch. (Young & Jones) 765; *White-*

*house* v. *Fellows*, 10 Com. Bench (N. S.) 765; *Nicklin* v. *Williams*, 10 Exch. (Hurlstone & Gordon) 259; *Argall* v. *Bryant*, 1 Sandf. (S. C.) 98; *Bank of Utica* v. *Childs*, 6 Cowan, 238; *Leonard* v. *Pitney*, 5 Wend. 30; *Morgan* v. *Plumb*, 9 id. 287; *Stafford* v. *Richardson*, 15 id. 302; *McKerras* v. *Gardner*, 3 Johns. 137; *Kelsey* v. *Griswold*, 6 Barb. 436; *Baines, Admr.*, v. *Williams*, 3 Iredell (N. C.) 481; *Mardis, Admr.*, v. *Shackelford*, 4 Alabama, 493; *Belts* v. *Norris*, 21 Maine (8 Shep.) 314; *Garlin* v. *Strickland*, 27 Maine (14 Shep.) 443; *Miller* v. *Adams*, 16 Mass. 456; *Manufact. Co.* v. *Manufact. Co.* 16 Pick. 241; *Pyle* v. *Beckwith*, 1 Marshall's (Ky.) 445; *Hansford* v. *Elliott*, 9 Leigh (Va.) 79; *Kerns* v. *Schoonmaker*, 4 Ohio, 331; *Exrs. of Sinclair* v. *Bank of S. C.* 2 Strobhart's (S. C.) 332; *Dillard* v. *Philson*, 5 id. 213; *Wilcox* v. *Exrs. of Plummer*, 4 Peters (U. S.) 172; Angell on Lim. §§ 136, 298.

3. That the evidence shows that the death of the intestate was not instantaneous; that she survived and was conscious after the act which resulted in her death; and that hence the statute began to run in her life-time, we call attention to the reasoning of the cases in *Kearney's Admrs.* v. *Boston & Worcester R. R. Co.* (9 Cush. 108); *Hollenbeck's Admrs.* v. *Berkshire R. R. Co.* (id. 478).

4. We may also add that the principle so well settled, that the statute in such cases begins to run from the moment of the·act which produces the injury, has been distinctly recognized and adopted by this tribunal in *Gustin* v. *Co. of Jefferson* (15 Iowa, 158).

*Fourth.* If the statute began to run during the life-time of the intestate, no subsequent disability, not even her death, could suspend it, but it continued to run until the cause of action was barred, unless there is some saving or qualification in the statute' itself. *McCoy's Adms.* v. *Nichols*, 4 How. (Miss.) 31; *Abbott's Admrs.* v. *McElroy*, 10

Sme. & Mar. (Miss.) 100; *Grozier* v. *Gand & Wife*, 1 Bibb's (Ky.) 257; *Beauchamp* v. *Mudd*, 2 id. 537; *Langford's Admrs.* v. *Gentry*, 4 id. 468; *Ruff's Admrs. v. Bull*, 7 Har. & Johns. (Md.) 14; *Doe v. Jones*, 4 T. R., 301; *Granger's Admrs.* v. *Granger*, 6 Ohio, 17; *Coventry* v. *Atherton*, 9 id. 34; *Peck* v. *Randall*, 1 Johns. 165; *Wenman* v. *Ins. Co.*, 13 Wend. 267; Bacon's Abr. 5, 236, 237, sub. 5, and note; *Admr. of McCullogh* v. *Sheel*, 3 McCord (S. C.) 455; *Rhodes* v. *Smithurst*, 4 Mees. & Wels., 42; *Freake* v. *Cranefeldt*, 3 Mylne & Craig, 499; *The People* v. *White*, 11 Ill. 341; *Rogers* v. *Hillhouse*, 3 Conn. 398; *Saca* v. *DeGraff*, 1 Cow. 356.

*Fifth.* But another view, based upon our statute, we regard as disposing of this entire question.

1. The phraseology of the first section of chapter 116, on limitation of actions, is as follows: "The following actions may be brought within the times herein limited respectively after their causes accrue, and not afterward, except where otherwise especially declared, that is to say—

"1. Actions of slander, libel, malicious prosecution, injuries to the person, or for a statute penalty, within two years.

"2. Those against a sheriff or other public officer, for acts or omissions in office, within three years.

"3. Those founded on unwritten contracts, for injuries to property, for relief on the ground of fraud, etc., within five years.

"4. Those founded on written contracts, on judgments, except in courts of record, and for recovery of real property, within ten years.

"5. Those founded on judgments of courts of record of this or any other State or United States, within twenty years." Rev. § 2740.

2. This is an action for an injury to the person. It occurred, as we have seen, at the time of the act or

negligence which occasioned the injury. And section 2740 expressly provides that such actions may be brought within two years, and not afterward, except where the statute otherwise authorizes or "specially declares." In other words, actions for injuries to the person must be brought within two years, unless some special declaration, exception or reservation of the statute authorizes them for particular reasons or in special cases to be brought after this limitation.

3. Unless, therefore, the statute does otherwise "specially declare"—unless it contains some exception covering the case—and extending the period of limitation, the statute attached at the end of two years, and barred the plaintiff's remedy. An examination of the statute will show that there is no provision or special declaration excepting or taking this case out of the two years' limitation. It will be seen that chapter 116 does provide for and "specially declare" that in certain specified cases actions may be brought after the times fixed and limited by section 2740. But the exceptions are limited to four, and they do not cover or reach this case.

II. It is a well settled principle, that where the action or negligence of the party injured contributes directly to the injury complained of, he cannot recover for such injury. *Catlin* v. *Hills*, 65 English Com. Law (8 Mann. Gran. & Scott), 123; *Noyes* v. *Morristown*, 1 Vt. 353; *Rathbun* v. *Payne*, 19 Wend. 399; *Hartfield* v. *Roper*, 21 id. 615; *Brownell* v. *Flagler*, 5 Hill, 282; *Brown* v. *Maxwell*, 6 id. 592; *Cook* v. *Champlain Trans. Co.*, 1 Denio, 91; *Munger* v. *Tonawanda R. R. Co.*, 4 Comst. 349; *Spencer* v. *Utica and Schen. R. R. Co.*, 5 Barb. 337; *Brand* v. *Schen. and Troy R. R. Co.*, 8 id. 368; *Clark* v. *Utica and Schen. R. R. Co.*, 11 id. 112; *Haring* v. *N. Y. and Erie R. R. Co.*, 13 id. 9; *Terry* v. *N. Y. Central R. R. Co.*, 22 id. 574; *Dascomb* v. *Buf-*

*falo and State Line R. R. Co.*, 27 id. 221; *Wilds* v. *Hudson River R. R. Co.*, 24 N. Y. 430.

And the following authorities hold, that the party complaining is not only bound to show negligence on the part of the defendant, but also to show affirmatively that he was without fault, and that his conduct did not contribute to the injury. *Thompson* v. *Bridgewater*, 7 Pick. (Mass.) 183; *Lane* v. *Crombie*, 12 id. 177; *Adams* v. *Carlisle*, 21 id. 146; *Parker* v. *Adams*, 12 Metc. (Mass.) 415; *Gaheegan, Admr.,* v. *Boston and Lowell R. R. Co.*, 1 Allen (Mass.) 187; *Wright* v. *Malden R. R. Co.*, 4 id. 283.

And where the action is brought by the administrator, it cannot be maintained if the conduct or negligence of the intestate contributed to the injury. The same defense exists in this respect as if action be brought by the party injured in person. Redfield on Railways; *Tucker* v. *Chaplin*, 2 Car. & K. (61 Eng. Com. Law), 730.

III. Francis Jacques, who had charge of the skiff at the time of the accident, was not the servant of the defendants; and even if the injury was caused by his negligence, the defendants are not liable for his carelessness and neglect.

1. In the consideration of this question, it should be borne in mind, that this action is not maintainable on the implied contract of the carrier to safely carry and convey the passenger; but is based and founded on the negligence or misfeasance of the carrier or his servants. Angell on Limitations, § 299; *Brotherton* v. *Wood*, 3 Brod. & Bing. 54; 1 Hilliard on Torts, 40; 2 id. 331–3; *Bank of Orange* v. *Brown*, 3 Wend. 158.

It is indeed true, that carriers of property or baggage, under their contract, are held to be insurers for its safe conveyance and deposit at its place of destination, and are bound safely to transport and deliver it to the owner.

Sherman v. The Western Stage Company.

Nothing exempts them from liability except the acts of God and the public enemies. Angell on Carriers, §§ 521, 522, 523, 568, 570; *Camden and Amboy R. R. Co.* v. *Burke*, 13 Wend. 626.

But no such rule prevails as against carriers of passengers. They are not insurers of the lives or persons of their passengers. They do not assume and undertake to safely carry at all hazards. Their contract only binds them to strict care and diligence in the discharge of their undertaking, and makes them liable only for negligence and want of care on the part of themselves and servants. Angell on Carriers, §§ 521–23, 568–70; Redfield on Railways, § 149, p. 323; *Camden and Amboy R. R. Co.* v. *Burke*, 13 Wend. 627; *Ingalls* v. *Bills*, 9 Metc. 1.

And upon this distinction rests the doctrine that the action against carriers of passengers for injuries to their passengers, is based and founded upon their negligence or misfeasance. Upon no other ground can it be maintained. If they exercise all the care and diligence imposed and enjoined by their implied contract, no liability attaches for injuries happening to their passengers.

2. This presents the question whether the injuries complained of in this action are attributable to the conduct or negligence of the defendants or their servants; in other words, whether Francis Jacques, who had charge and management of the skiff at the time of the accident, was the servant of the defendants in such a sense as to render them liable for his acts. We say no. The evidence in this case, without conflict or dispute, shows that one Isaac Jacques, who lived near the Boone River crossing, owned and run the skiff across the stream at the place the accident occurred; that he used and run it daily by himself and servants for the accommodation of travelers and other persons desiring to cross the river, carrying them across and receiving the compensation

therefor; that he had the sole and separate and independent control, direction and management thereof; that he furnished and provided the hands to manage and run the same; that the defendants had no interest in or control over the skiff, or the running thereof, nor over the persons manning and running it; that they employed the said Jacques to transport for them daily across the stream the United States mails; that on the arrival of the hack of the defendants at the crossing, on the morning of the accident, the driver called to Jacques to come and carry the passengers across; and that Francis M. Jacques, the son of the owner of the skiff, then being in his employ, undertook and attempted to ferry the passengers and mails across the stream in the skiff; and that owing to the conduct of the intestate, or the negligence of the person in charge of the skiff, or some other cause, the boat upset, and the injuries complained of ensued.

Under this state of facts the authorities hold beyond all controversy and dispute that the said Francis M. Jacques was the servant of Isaac Jacques, and not of the defendants. *Laugher* v. *Pointer*, 5 Barn. & Cress. 547; *Quarman* v. *Burnett*, 6 Mees. & Wels. (Exch.) 497; *Rapson* v. *Cubitt*, 9 id. 710; *Milligan* v. *Widge*, 12 Adol. & Ellis, 737; *Huzzy* v. *Field*, 2 Exch. 432; *Reedie* v. *N. W. Railway Co.*, 4 id. 244; *Knight* v. *Fox*, 6 Exchequer (W. H. & Gordon), 721; *Overton* v. *Freeman*, 11 Com. Bench, 766; *Peachy* v. *Rowland*, 13 id. 182; *Moore* v. *Sanborn*, 2 Mich. 520; *Barry* v. *St. Louis*, 17 Mo. 121; 1 Ala. 366; *Crockett* v. *Calvert*, 8 Ind. 127; *Felton* v. *Deall*, 22 Verm. 170; *Pawlett* v. *Rutland*, 28 id. (2 Williams) 297; *Sproul* v. *Hemingway*, 14 Pick. (Mass.) 1; *Hilliard* v. *Richardson*, 3 Gray, 349; *Lenton* v. *Smith*, 8 id. 147; *Dalzell* v. *Tyrer*, 7 Am. Law Reg. (1858-9) 440; *Potter* v. *Lyman*, 4 Bosw. (N. Y.) 140; *O'Rorke* v. *Hart*, 7 id. 511; *Gardner* v. *Cormack*, 2 E.

Sherman v. The Western Stage Company.

D. Smith, 254; *Heimstreet* v. *Howland*, 5 Denio, 68; *Blake* v. *Ferris*, 1 Seld. 48; *Stevens* v. *Armstrong*, 2 id. 435; *City of Buffalo* v. *Halloway*, 3 id. 193; *Pack* v. *Mayor of New York*, 4 id. 222; *Kelley* v. *Mayor of New York*, 1 Kern. 432; *Blackwell* v. *Wiswall*, 24 Barb. 355; *Norton* v. *Wiswall*, 26 id. 618; Story on Agency, § 433, *a*, *b*, *c*, and notes; Redfield on Railways, § 168, sub. 1 to 7, p. 377.

IV. The court erred in charging the jury, that the plaintiff was entitled to recover exemplary damages, and in refusing to give the instructions asked by defendants, numbered 11 and 12, in relation to such damages.

1. Under the statute the defendants could only be liable to the estate for the death of intestate. Rev. § 4111; *Rippey* v. *Miller*, 11 Iredell (N. C.) 237.

2. The damages in such case are limited to the pecuniary loss sustained by the death — to the actual pecuniary value of the life of decedent. *Blake, Admr.*, v. *Midland R. R. Co.* (182 B. 93) 10 Eng. Law & Eq. 437; *Penn. R. R. Co.* v. *McCloskey*, 23 Penn. 526; *Franklin* v. *S. E. R. R. Co.*, 3 Exch. (Hurlst. & Norm.) 211; *Duckworth* v. *Johnson*, 7 Am. Law Reg. 630; *Tindall* v. *Ohio & Miss. R. R. Co.*, 13 Ind. 366; *Whitford* v. *Pan. R. R. Co.*, 23 N. Y. 465; *Donaldson* v. *M. & M. R. R. Co.*, 18 Iowa, 280.

3. The English statute and the New York statute are in substance our own. 9 & 10 Vict. ch. 93 (1846); N. Y. Laws 1847 and 1849, ch. 256; Rev. 1860, § 4111.

The damages under each of these go to the whole or part of the next of kin. The construction of the New York statute throws light upon our own. In the able opinion of COMSTOCK, J., in the case of *Quin* v. *Moore* (15 N. Y. 432), the true doctrine is announced. He says:

"The theory of the statute law is, that the next of kin have a pecuniary interest in the life of the person killed, and the value of this interest is the amount for which the jury is to give their verdict. Neither the personal wrong or outrage to the decedent, nor the pain and suffering he may have endured, are to be taken into the account. These would be the foundation of the action, and would furnish the criterion of damages if death had not ensued, and the injured party had brought the suit. But the claim of the administrator, and through him of the next of kin, is altogether different. The statute imputes to them a direct pecuniary loss in being deprived of a life to them of greater or less value."

4. But for the act complained of, the defendants, if guilty, even if a corporation, are indictable. *Donaldson* v. *M. M. R. R. Co.*, 18 Iowa, 280, and cases cited.

And in such cases no exemplary damages are allowable. *Austin* v. *Wilson*, 4 Cush. 273 ; *Whitney* v. *Hitchcock*, 4 Denio, 461; *Thorley* v. *Lord Kerry*, 4 Taunt. 355.

V. The damages allowed by the jury are excessive, and for this reason a new trial should have been granted.

1. The authorities above cited touching the question of exemplary damages establishes the rule, that in this class of actions damages are recoverable only for the pecuniary value of the life of the intestate; that is, the estate is entitled to recover so much money as her life, if it had been prolonged, would have yielded to her heirs. In other words, whatever amount would have probably been added to her estate by the continuance of her life, is the measure and limit of the damages.

2. The jury, under the fourteenth instruction given by the court, were authorized to, and doubtless did, allow, damages for the value of the annual earnings of intestate; and if so, the damages are excessive. The earnings of intestate were the property of her husband. They

became a part of his estate, and if she had lived for any period of years, her earnings would have belonged to the estate of her husband, and not to her estate. *Tilley* v. *Hudson R. R. Co.* 24 N. Y. 471; 2 Kent's Com., Lect. 28; *Dunam* v. *Roselle*, 15 Iowa, 561; *Laing* v. *Cunningham*, 17 Iowa, 510.

Now, if, as matter of law, these earnings could not pass to the separate estate of the wife, under the rule above laid down for the estimate of damages, they were improperly taken into the account by the jury in their computation. And this is distinctly held in the case in 24 N. Y. 471, above cited.

3. When the damages in cases of this description exceed the pecuniary value of the life of decedent they are to be regarded as excessive, and a new trial granted. *Blake* v. *Midland R. R. Co.*, 83 Eng. Com. Law (18 Q. B.), 93; *Franklin* v. *S. E. R. R. Co.*, 3 Exch. (Hurlst. & Wolm.) 211.

In the case last cited, the verdict was for seventy-five pounds. The action was by the father for the value of the life of his son, under the statute of 9 and 10 Vict., and a new trial was granted solely on the ground of excessive damages.

In this case the jury, under the instructions or otherwise, mistook the principles upon which the damages should be estimated. In such cases the court will grant a new trial. Sedgwick on Damages, ch. 26, 2d ed., p. 602; Graham on New Trials, 442 to 456.

And see on the question of new trials, for excessive damages, the following cases: *Price* v. *Severn*, 7 Bing. 316; *Chambers* v. *Robinson*, 1 Strange, 691; *McConnell* v. *Hampton*, 12 Johns. 234; *Nettle* v. *Harrison*, 2 McCord, 230; *Diblin* v. *Murphy*, 3 Sandf. S. C. 19; *Clapp* v. *Hud. Riv. R. R. Co.*, 19 Barb. 461; *Pattee* v. *Thompson*, 22 Barb. 87.

*Boardman & Brown* for the appellee.

The following points are condensed from the argument of appellee's counsel:

I. The testimony as to the habits, conduct and intoxication of the drivers was admissible under the direct issues on those points: "Skill of the driver of a stage-coach may often be the gist of an action, by a passenger, for the recovery of damages." * * * * "It is a business which demands a high degree of firmness and skill." * * "They must be careful and trustworthy in their general character." "The company must not employ as their servants persons of intemperate habits, and who are liable to be intoxicated while in the performance of their journey." Angell on Com. Car. §§ 540, 541.

"In the Supreme Court of the United States it was admitted that when a coach was upset and plaintiff's wife injured, it was incumbent on the defendant to prove the driver was of competent skill and good habits, and in every respect qualified for his business." Ang. on Com. Car., § 569; *Stokes* v. *Saltonstall*, 13 Peters (U. S.) 181; 13 Curtis, U. S. 114.

II. The Carlisle tables were competent evidence, and were duly identified. *Donaldson* v. *M. & M. R. R. Co.*, 18 Iowa, 291; *Bowman* v. *Woods*, 1 G. Greene, 441; 2 Beck's Medical Jurisprudence, 666.

III. The instructions given were excepted to, and the instructions refused were excepted to, each and all of them. None, however, are marked "excepted to" in the margin as required by §§ 3059, 3109, of Rev. Under such general and sweeping exceptions there is perhaps no necessity, nor possibility of argument. We cite a few authorities, governing in such cases and applicable also in some measure to the supposed errors in the reception and rejection of testimony.

The exception must be noted at the end of the decision, or in connection therewith. Rev. 3108.

No exception shall be regarded unless the ruling is prejudicial to the substantive rights of the party excepting. Rev. 3111.

If an instruction does not give the law as fully as it might by a qualification, it is incumbent to ask for the qualification. 4 Iowa, 508; 3 id. 58; 11 id. 350.

There will be no reversal, unless it is evident that prejudice resulted. 2 Iowa, 463; 4 Green, 544; 2 Iowa, 44; 2 id. 30. It is the duty of the party to call the attention of the court to the specific matter excepted to. 6 id. 198, 199. When it appears justice has been done and a new trial would result in the same verdict, erroneous rulings will not reverse. *Bondurant* v. *Crawford*, D. T. 1866; *Dawson* v. *Wisner*, 11 id. 6; *Pelamorgues* v. *Clark*, 9 id. 1; *Woodward* v. *Horst*, 10 id. 120.

Where the court below overruled a motion for a new trial on the ground the verdict was contrary to instructions, it will be presumed there was no such contradiction. 14 Iowa, 501, 504. Instructions will be construed all together, and if one is objectionable taken alone yet if with the others it states the law there is no error. The " charge " and instructions given cannot be reviewed. *Shephard* v. *Brenton*, 20 Iowa, 41; 14 id. 214, 225; 15 id. 149; *Ruble* v. *McDonald*, 18 id. 493. A statement that " each of the instructions were excepted to " is not sufficient. 13 id. 238, 330; 15 id. 476; 16 id. 62, 65, 339. A general exception presents no question for review on appeal. *Oldfield* v. *Harlem R. R. Co.*, 14 N. Y. 315; 4 Seld. 37; *Hart* v. *R. & S. R. R. Co.*, 1 Kerr, 416; 2 id. 313.

IV. As to the statute of limitations.

1. The language of our statute, and a recent New York decision, settle any doubts, and fix the true theory to be that there was no cause of action prior to the decease. It

is the death itself which creates the cause of action and therefore the statute could not commence to run at any time prior to decease. Rev. § 4111; *Whitford* v. *Pan. R. R. Co.*, 23 N. Y. 470; *Blake* v. *M. R. Co.*, 10 Eng. L. & E. 443.

2. It is equally undisputed, that unless the statute has once commenced to run, it does not so commence to run till an administrator is appointed. The administrator in this case was first appointed but a few days before the commencement of this suit. "Where there is no person to commence an action there can be no laches." 8 Cranch, (U. S.) 84; Ang. on Lim. § 55; *Murry* v. *East India Co.*, 5 Barn. & Ald. 204; *Perry* v. *Jenkins*, 1 Mylne & Craig Ch. 118; *Sturges* v. *Sherwood*, 15 Conn. 149; *Hansford* v. *Elliott*, 9 Leigh, 79; *Ruff* v. *Bull*, 7 H. & Johns. (Md.) 14; *Fishnick* v. *Sewell*, 4 id. 393; *Grubb* v. *Clayton*, 2 Haywood (N. C.), 378; *Warham* v. *Mohaw, Co.* 13 Wend. 267; *Geiger* v. *Brown*, 4 McCord (S. C.) 423; *Witt* v. *Elmore*, 2 Bail. (S. C.), 595; *Levering* v. *Rittenhouse*, 4 Whar. (Penn.) 130; 3 Strob. (S. C.) 149; 1 Kelly (Ga.) 379; 5 Barb. 393; 3 McLean, 568; 19 Miss. 467; 29 Miss. 57; 11 Met. 445; 15 Conn. 145; 2 Ired. 44; 29 Ala. 510; 9 Mo. 227; 9 Miss. 262; 6 Ala. 714; 4 Mees. & Wels. 42; 6 id. 351; 8 Barn. & Cress. 277; 3 McCord, 455; 10 Vesey, 93; 3 Stew. 172; Harper, 135; 3 Bibb. 537; *Granger* v. *Granger*, cited by defendants, 6 Ohio, 43.*

The authorities of appellant are all based on the theory that a cause of action accrued even before and during an almost instantaneous death.

---

* The word "accrue" in our statute has always been interpreted to mean, that till an administrator appointed no cause of action accrues 5 Barb. 393; 13 Wend. 269; 7 Com. Law, 66; 15 id. 113.

V. As to the supposed negligence of the deceased.

1. The District Court gave the rule on this subject in its most favorable aspect for defendant. A somewhat different rule is referred to in *Donaldson v. M. & M. R. R.* (18 Iowa, 288), and there stated to have the merit of much fairness, but we are in doubt whether it by this court is considered the law. It is emphatically stated to be the "general rule in respect to negligence." Ang. on Com. Car. § 561. And if it be the correct interpretation of this disputed point it has application in this case. For the defendant (even if the deceased was destitute of ordinary prudence) might have avoided the catastrophe by carefully striking the current, carefully handling the oars, and by refusing to spring for the mail bags, abandoning his oars and thus overturning the boat. 5 Sneed. 524 ; 1 Head. 610 ; 37 Ill. 340 ; 38 id. 370 ; 20 id. 251 ; 38 id. 244.

2. But supposing the rule to be as given, it then became a question for the jury whether the deceased exercised the degree of prudence that females of her age and station ordinarily exercise. If the evidence was conflicting, (even) this court will not interfere. In fact, however, the overwhelming preponderance of testimony is, that the deceased ladies conducted themselves as Roman and Spartan matrons from the first to the last moment.

Appellant may assume, that the conduct of the deceased as the boat was swamping, was indiscreet. But there is little or nothing on which to predicate such an assumption. The ferry boy thinks " she slid over " (as the boat rocked). This was natural and necessary, and as likely to be conservative as to spring to the opposite side. Let that be as it may, it does not lie in the mouth of the stage company, after placing the deceased in jeopardy, to require of her great presence of mind and feminine discrimination. *Newson v. N. Y. Central R. R.*

*Co.*, 29 N. Y. 390; Redfield on Railways, 327, note; *Brown* v. *N. Y. Central R. R. Co.*, 32 N. Y. 597; 34 id. 670; 30 id. 208; 1 Hilliard on Torts, 169, 177; 22 id. 215.

VI. The oarsman was the appellant's agent.

The position of the appellant on this point is without law or logic. It is out of all reason to say, that a common carrier, contracting for the whole distance, can abandon the passenger at the most dangerous part of the way, surrender him to the tender mercies of a "hobble-dehoy," with a crazy skiff, and when the corpses strew the bank, exclaim, "these are none of my funerals." There would be no possible safety to the traveling public under such a regimen. Why not say the drivers were not their employees? The appellant employed this boy and skiff, paid for the services, directed in the loading and unloading, had complete control of it, and is responsible for the consequences.

When the legislature has established a ferry at a given point, made a franchise of it, invested some particular body with power to run it, it then becomes a part of the road and no common carrier can control or interfere with it. The party (or its assigns) operating it is alone responsible. Such is the case of 24 Barbour, most relied on by the appellant. There is no parallelism between that case and this.

"When any other than the drivers are permitted to assume control of the stage coaches, the company will be liable for their unskillfulness." 3 Ill. Digest, 235; 21 Ill. 649; 22 id. 109; 20 id. 388, 496; 20 Ohio, 388.

"Railroad companies are liable for the safety of passengers and baggage to their destination, even over other roads over which they sell tickets." *Illinois Cent. R. R. Co.* v. *Copeland*, 24 Ill. 339.

If stage companies contract to carry a given distance,

they are liable over the whole line; if they contract to carry beyond their own line, they are liable for injuries received on the other line. Chitty on Com. Car. § 310, p. 409 (citing 14 Com. B. 255); 78 Eng. Com. Law; 2 Com. Law, 188; also see Story Ag. § 452 and sequel; 13 Wend. 518; 23 id. 260; Angell on Com. Car. § 531 (citing *Dudley* v. *Smith*, 1 Campb. 167); Story on Bail, § 600; Jeremy on Car. 23; 1 Esp. 27; 4 id. 260; 19 Wend. 534.

Some rules of agency do not apply to common carriers. Redfield on Railway, 381. The principal is always present. Redfield on Railways, 384, 385.

VII. As to exemplary damages.

1. The precedents established by the Supreme Bench in the State of Iowa are constant and convincing, that exemplary damages are proper in such cases. They tend more and more in that direction.

" Vindictive damages ought not to be given unless the trespass be committed in a wanton, rude and aggravated manner." *Thomas* v. *Isett*, 1 Greene, 475.

Prof. Greenleaf's extreme views are not justified by the authorities, and are well refuted by Sedgwick (citing many authorities). " In case of gross negligence on the part of a stage proprietor (such as the employment of a drunken driver), we think exemplary damages should be entertained." *Frink & Co.* v. *Coe*, 4 Greene, 559.

In an action against a physician for gross negligence in treating disease, " plaintiff may recover vindictive as well as actual damages." *Cochran* v. *Miller*, 13 Iowa, 128.

In *Plummer* v. *Harbut* (5 Iowa, 314), it is assumed, that had there been aggravating circumstances exemplary damages would have been given against a ministerial officer.

In *Stevenson* v. *Belknap* (6 Iowa, 98), this court approved of exemplary damages to the father for the seduction of his daughter.

2. Since the discussion on this point between Messrs. Greenleaf and Sedgwick, in the year 1847 (see Appendix to Sedgwick on Damages, 652–672, where both positions are argued by these learned men), the great bulk of authority is for exemplary damages.

Thus, in 1851, *Day* v. *Woodworth* (19 Curtis, 536), the Supreme Court of the United States say:

"In actions of trespass, where the injury has been wanton and malicious, or gross and outrageous, courts permit juries to give 'smart money.' It is a well established principle of the common law, that in actions of trespass and on the case for torts, the jury may inflict what are called exemplary, punitive or vindictive damages. We are aware this has been questioned by some writers, but if repeated judicial decisions for more than a century are to be received, the question will not admit of argument."

Then in 1865, *Lipe* v. *Isenlerd* (32 N. Y. 236), the Supreme Court allow exemplary damages for the seduction of a daughter twenty-nine years of age, and they declare such to have been the law of that State and the English courts for many years. In the dissenting opinion of Justice CAMPBELL, at the close of the volume (32 N. Y.), no question is raised as to the right to exemplary damages. This same authority conclusively holds, that exemplary damages are permissible, whether the plaintiff is connected with the injury technically and conventionally, or closely, meritoriously and by reason of blood relationship.

In general on exemplary damages, also see 28 Ill. 488; 23 id. 404; 2 Wend. 471; 3 Scam. 373; 3 Esp. 119; 4 E. D. Smith, 657; 1 id. 279.

3. The fact, that the corporation (defendant) could be indicted does not vitiate the right to exemplary damages.

"The civil remedy is not merged in a public offense, but independent of and in addition." Rev. 4110.

" The rule giving exemplary damages, when the injury is attended with circumstances of aggravation, is not qualified by the probable or actual punishment of the defendant by indictment and conviction." *Cook* v. *Ellis*, 6 Hill, 465; Sedgwick on Damages, p. 479, § 445, note 2; citing 6 Texas, 266; 1 Cal. 54; 18 Mo. 71; especially *Fry* v. *Bennett*, 1 Abb. Pr. 289; *S. C.*, 4 Duer, 247.

4. We deny, that the statute under which this action is brought, or similar statutes, or the decisions under them, either directly or inferentially exclude exemplary damages, nor does the fact, that the plaintiff sues in a representative character, introduce any principle which would be violated by exemplary damages.

Our statute stops by declaring in case of the wrongful death " the perpetrator is civilly liable for the injury " (Revision, §§ 1409, 1410), thus signifying the liability is not restricted to actual damages. No other statute is worded as strongly and with as little modification. For instance, the New York statute (see *Oldfield* v. *Harlem R. R. Co.*, 14 N. Y. 315) restricts the damages and makes the action conditional, that if the deceased could have recovered "if death had not ensued, then a recovery may be had," notwithstanding such death, thus indicating, that even under that act, exemplary damages might be given, but not to exceed a certain sum. The English statute is similar, but our own, unlike any other, leaves it, that the perpetrator is civilly liable.

The gist of exemplary damages has reference to the demerit of the defendant, and not the merit of the plaintiff. It is punitive and exemplary (punishment and example). Sedgwick on Damages, § 456.

The defendant argues, that the value of the life alone is to be considered, and that the mental and bodily suffering must be excluded, (ergo) exemplary damages. It is by no means clear, that mental and physical suffering of the

deceased is to be excluded under our statute. The best considered cases give such damages, says Judge Redfield on Railways, p. 337, note 3, citing *Canning* v. *Williamstown* (1 Cush. 451) ; *Morse* v. *A. & S. R. R.* (10 Barb. 623) ; also see 4 Ohio, 416 ; 1 Bos. & Pul. 404 ; 2 Denio, 433. The Maryland statute is entitled "to compensate families of persons killed," etc. And under that statute it was held in *State of Maryland* v. *Railroad Co.* ( see May, 1866, Am. Law Reg. p. 397), that compensation, not solace, was the object. Judge Redfield, in the note to that case, concedes the vacillation of authorities and the propriety of the rule contended for under the particular statute, and others similar, but not, therefore, does it follow under the broad Iowa statute. Nor does this tribunal in *Donaldson* v. *M. & M. R. R.* (18 Iowa, 290) do more than to hold, that such a doctrine is at least favorable enough to the defendant.

On the general subject of exemplary damages, the leading cases are so fully given in Sedgwick on Damages (marginal 454, note 2, 32 N. Y. 232, 4 Iowa, 559), that repetition is not deemed necessary.

That the most exemplary rules will be enforced against common carriers, and that gross negligence, even if there is no bad intent, justifies such damages, see *Hill* v. *N. O., O. and G. W. R. R. Co.*, 11 La. Ann. 292 ; *Vicksburg and Jackson R. R. Co.*, 31 Miss. 156 ; *Frink & Co.* v. *Coe*, 4 Greene, 559 ; *McKinney* v. *Niel*, 1 McLean (Circuit Court), 540. Angell on Common Carriers (§ 544) says this last case justified the most exemplary damages of $5,325.

The evidence was ample to satisfy the jury that the drivers were reckless, profane and drunken ; that they cursed the ladies and forced them all into the crazy skiff, and threatened to leave them on the bank if they did not all embark together ; that they treated these unpro-

tected females indecently and inhumanly from beginning to end; that the company were notified long before of their recklessness and drunkenness, yet retained them in their service.

VIII. The damages were not excessive.

The points of law well established under this head, by this and other courts, are to the effect that, to grant a new trial, first, the verdict must be manifestly outrageous; second, it must shock the mind of every person; third, that the court below will be sustained except in gross abuse of discretion; fourth, the damages must be so excessive as to unerringly indicate corruption or passion; fifth, an error in judgment will not avail to set aside; sixth, in cases of tort to the person, above all others, the appellate court and the court below will be loth to interfere. See 3 Graham on New Trials, 427–476; 10 Iowa, 396; 11 id. 84, 401; 12 id. 85; 14 id. 59, 363; 13 id. 600; 15 id. 25, 596; 16 id. 121, 339; 17 id. 365.

The courts have declined to interfere in the following cases: In *Hegeman* v. *Western R. R. Corporation* (16 Barb. 359), where the plaintiff was crippled for life, yet it was conceded there was no want of ordinary care on part of defendant, verdict was $9,900. In *Russ* v. *Steamboat War Eagle* (14 Iowa, 372), Chief Justice WRIGHT delivers the opinion of the court, and holds that $3,000 for the fracture of an arm does not justify a new trial — "such questions are peculiarly within the province of a jury " — "some courts have doubted if they should ever interfere in such cases " — citing *Lumley* v. *Bushnell* (16 Conn. 235); *Holbrook* v. *U. and S. R. R. Co.* (2 Kern. 236); *Steamer New World* v. *King* (16 How. 472).

Three cases are mentioned in Angell on Common Carriers (3d ed., p. 541, § 601, note 2), in which the verdicts were respectively $70,000, $25,000, and, for a boy twelve years of age, $10,000; Redfield on Railways (338,

note 3), verdict $10,000 ; *Oldfield* v. *N. Y. and H. R. R.* (3 E. D. Smith, 103), verdict for a child seven years of age, $1,300 ; *McKinney* v. *Niel* (1 McLean [Circuit Court] 540), verdict $5,325.

This case was by a stage coach passenger for injuries by furious driving of a coachman, and although there was no evidence that the company knew of the reckless character of the driver, yet, says Angell on Common Carriers (§ 544), it authorized "very exemplary damages by the jury." They found a verdict of "five thousand three hundred and twenty-five dollars." Also see Pierce's Am. R. R. Law, 261 ; $5,000, 38 Ill. 244 ; $3,839.75, 16 Iowa, 347 ; $4,000, 24 N. Y. 477 ; $3,000, 6 Iowa, 98 ; $5,000, 2 Hill, 45 ; $10,000, 4 E. D. Smith, 117.

If the verdict should be deemed by this tribunal excessive, it is a proper case in which to make the new trial conditional upon the plaintiff entering a remittitur. 10 Iowa, 120; 3 id. 385 ; 8 id. 74; 11 id. 6 ; 16 id. 183.

COLE, J. — I. It was held by this court, in the case of *Sherman* v. *The Western Stage Co.* (22 Iowa, 556), that 1. LIMITATION, an action to recover damages for the death STATUTE OF: of a person, caused by the wrongful act of when it begins to run: administrator. another, was an action for an injury to the person, and, under our statute of limitation (subdivision 1, section 2740 of Revision) was barred in two years.

The plaintiff's counsel, not controverting that decision, contend, that this cause of action accrued not to the deceased, but after her death to her personal representative, and that, before the statute can run, there must exist a party to sue and a party to be sued, for, until then, a cause of action cannot be complete ; and, therefore, the statute of limitation did not begin to run until the appointment of an administrator. *Wernnan* v. *The Mohawk Ins. Co.*, 13 Wend. 268 ; *Granger's Admr.* v. *Granger*, 6

Ohio, 35, and authorites cited in the note; see also authorities cited by appellee's counsel in the argument. This proposition, as a general rule of law, may well be conceded; as may also the further one, that unless the statute has once commenced to run in the life-time of the party entitled, it does not commence until an administrator is appointed. Cases cited, *supra*.

The section of our statute under which this action is brought is as follows: " Sec. 4111 (2501). When a wrongful act produces death, the perpetrator is civilly liable for the injury. The parties to the action shall be the same as though brought for a claim founded on contract against the wrong-doer and in favor of the estate of the deceased. And the sum recovered shall be disposed of in the same manner, except that when the deceased left a wife, child or parent surviving him, it shall not be liable for the payment of debts." This is the whole of our statute upon the subject. It was enacted by our legislature after the English statute (9 & 10 Vict. ch. 93) and after the New York statute (Laws of 1847, p. 575, and Laws of 1849, p. 388) upon the same subject, and is much more concise and brief than either.

At the common law, if one person assaulted and beat another, the person so assaulted and beaten might have his action and recover damages therefor. But if the beating was so severe as to produce death, then the wrong-doer was exempt from liability to damages in a civil action. Our modern statutes, giving the right of action where the wrongful act produces death, have been, in the opinion of the writer, very evidently enacted to cure the manifest injustice of the common law rule. They do not, in my opinion, create a new cause of action, but simply remove the common law bar to a recovery where the wrongful act produces death. So that a wrong-doer is liable civilly for his wrongful act, whether such act is

so moderate as that his victim survives, or so immoderate as that he dies. In the one case, the action is by the person injured by the wrongful act, and in the other it is by the personal representative of the injured person. In either case the basis or cause of action is the wrongful act of the defendant. The damages may be more in the one case than in the other, but in either, they are based upon the wrongful act from which they have resulted.

The rule is a general and well settled one, that where the act or omission causes a direct injury an action may 2. —— injury. be instantly maintained, and that the statute period begins to run from the time when the act was done, without regard to any actual damages or to any knowledge of the party injured. 2 Greenl. on Ev. § 433, and authorities cited; Redfield on Railways, § 172, subdiv. 8; *Brown* v. *Jefferson Co.*, 16 Iowa, 339.

The wrongful act, omission or negligence complained of in this case was, I think, certainly completed and 3. —— rule ended when the plaintiff's intestate was thrown applied. from the boat; and an action therefor might, in the language of Professor Greenleaf (Greenl. on Ev. § 433), have been "instantly maintained." The fact that the act or omission complained of, threw the intestate into an element, which by natural consequence produced death, does not make the act or omission a continuing one, any more than it would be continuing if it had superinduced a disease, which by like natural consequence resulted in death. The cause of action then accrued to the intestate, and was complete the instant she was thrown from the boat. In the very nature of the case this must be so. No action accrues to an administrator except such as arise *after* the death of the intestate. This cause of action arose, and all the damages for which plaintiff sues accrued *before* the right or title of an executor or administrator could arise. While there was a spark of life, there could

be no administrator, and when that spark was extinguished, not only was the cause of action complete, but the right to the whole measure of damages had fully accrued. The administrator can maintain the action because the right of the intestate by force of our statute survives to, and devolves upon him, and not because the action accrued directly to him.

It is said by DAVIES, J., in delivering the opinion of the court in *Whitford, Admr.*, v. *The Panama R. R. Co.* (23 N. Y. 476), " The action which the law gave him was for the injuries to his person, and the statute contemplates, that no action can be maintained under it, but such as the deceased himself, if he had survived, could have maintained." And COMSTOCK, J., in his opinion in the case of *Dibble* v. *The New York & Erie Railroad*, in which the judges were equally divided, and re-argument was ordered, and which opinion is filed in and follows the opinion of DAVIES, J., in the case *supra* very forcibly says: " But this legislation with us, however it may be elsewhere, is remedial and not creative. It adds no new definition to the category of actionable injuries, but it provides, that immunity to the offender shall no longer be the consequence of the death of him who is injured, if such death be occasioned by the wrongful act or neglect. No new cause of action is created by the legislature; but the cause which, by the rules of the common law, has become lapsed or lost by the decease of the person to whom it belonged, is continued and devolved upon his administrator, who takes it by representation, as he takes other personal estate and rights of the decedent.   *   * The statute recognizes but one cause of suit, and that is, the wrong done, irrespective of its consequences. The injured party may be maimed for life, or he may die in a moment, or in a year, as the result of the injury. These are circumstances which may well influence the amount of

compensation to be claimed; but the statute declares the wrongful act, etc., and that only to be the foundation of the suit. The common law afforded no civil remedy after the death of the party. The statute supplies that remedy by allowing his representative to maintain the action. * * * In the view of the statute, therefore, the right to be enforced is not an original one, springing into existence from the death of the intestate, but is one having a previous existence, with the incident of survivorship derived from the statute itself. The death may be sudden, in common language, instantaneous. But in every fatal casualty there must be a conceivable point of time, however minute, between the violence and the total extinction of life. That period may be a year, or it may be less than the shortest known division of time. During its continuance the right of compensation for the wrong belongs to the victim, and it is capable of devolution, like other rights, upon his representative. * * * * The true point of inquiry is, whether a wrong of this nature resulting in death, affords more than a single cause of action. If it does not, then the proposition becomes too plain for argument, that the right is wholly vested in the injured party until he dies, whether he survives the casualty a moment or a month. * * * *

I adopt this language of the learned judge as being a plain, logical and irresistible argument, if not judicial authority, in support of the proposition that, at least, where, as in this case, ten minutes, more or less, transpired before death, the cause of action accrued to the intestate, and survives, by force of the statute, to the administrator. Such being the case, it follows that the statute commenced to run in the life-time of the intestate, and, having begun to run, no subsequent disability or death could suspend it. This action not having been brought until near *four* years after the cause thereof

arose, is, in my opinion, barred by our statute of limitation, which limits the time for bringing actions for injuries to the person to *two* years.

There are, in my opinion, other considerations than those already mentioned which as irresistibly lead to the same conclusion. If it be held that our statute gives a right of action for the *death* instead of for the wrongful act, then it must follow that our statute *creates* a new right or cause of action, and is not simply *remedial*. And it would follow, also, that such new cause of action would, contrary to every legal principle heretofore recognized, have its basis upon *damages* instead of the *wrongful act* or *negligence* which produced them. And it would also follow that two causes of action, in favor of the same party in substance, might have their basis in the same wrongful act or neglect — one to the injured party himself, where he survived the injury sufficiently long to prosecute his action, and another, after he dies, to his personal representative, for his death, which resulted from the same wrongful act or neglect. And further than this, the injured party might maintain his action, recovering liberal damages, and survive the injury for years ; and yet, his death being finally, after five, ten or twenty years, produced by the injury, his personal representative, who may not be appointed till years* after his death, may bring a new action for such death, and recover demages therefor. So that this new right of action, supposed to be conferred by our statute, would be beyond the reach of any statute of limitation. I cannot for a moment believe that our legislature intended to create any such new cause of action in violation of a clear legal principle, and exempt it practically from the operation of any statute of limitation.

---

* Our statute limits it to five years.

I am aware that there is not a perfect agreement in the cases under the different statutes as to the precise nature of the cause or right of action conferred by them. (I subjoin, in the form of a note, the material parts of some of the statutes, so far as I have been able to procure them.*) The cases found in the books have not, perhaps,

---

* Stat. 9 & 10 Vict. c. 93 (1864), entitled, "An act for compensating the families of persons killed by accident," after reciting, in section 1, that "no action at law is now maintainable against a person who, by his wrongful act, neglect or default, may have caused the death of another person, and it is oftentimes right and expedient that the wrong-doer in such case should be answerable in damages for the injury so caused by him," enacts: "That whensoever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who would have been liable if death had not ensued, shall be liable to an action for damages notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony."

"Sec. 2. Every such action shall be for the benefit of the wife, husband, parent and child of the person whose death shall have been so caused, and shall be brought by and in the name of the executor or administrator of the person deceased; and in every such action the jury may give such damages as they may think proportioned to the injury resulting from such death to the parties respectively, for whom and for whose benefit such action shall be brought. The amount so recovered, after deducting the costs not recovered from the defendant, shall be divided amongst the before-mentioned parties in such shares as the jury by their verdict shall find and direct."

The Ohio statute, passed March 25, 1851, is as follows:

"Sec. 1. Be it enacted by the General Assembly of the State of Ohio, that whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to murder in the first or second degree, or manslaughter.

"Sec. 2. Every such action shall be brought by or in the name of the personal representatives of such deceased persons, and the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin in the proportion provided by law in relation to the distribution of personal estates left by persons dying intestate; and in every such action the jury may give such damages as they shall deem fair and just, not exceeding five thousand dollars, with reference to the

had sufficient regard for the different phraseology of the different statutes on which they are based, and it might well be said that the cases under the same statute are not agreed.

In the case of *Gillard* v. *The Lancashire & Yorkshire Railway Co.* (12 L. T. 356), cited in the case of *Blake* v. *The Midland Railway Co.* (18 Q. B. 93 [E. C. L. vol. 83] ), POLLOCK, Ch. B., says :

"It is a pure question of pecuniary compensation, and nothing more, which is contemplated by the act (9 & 10 Vict. ch. 93). I think it is utterly impossible for a jury to estimate any sum as a compensation for the injured feelings of the survivors; all that is left which is appreciable after the death of the party killed, is the pecuniary loss sustained by his family, and this act enables them to recover that which the deceased would himself have sued for had the accident not terminated fatally. The framers of the act never could have meant to give compensation to the parent for the mere deprivation of a son, or the widow for that of her husband."

---

pecuniary injury resulting from such death to the wife and next of kin to such deceased person; provided that every such action shall be commenced within two years after the death of such deceased person." 2 Rev. Stat. (Ohio) 1140.

The Illinois statute was passed February 12, 1853, and is a copy of the Ohio statute, *supra.* 1 Stat. of Ill. (1858) 422.

The Kansas statute was passed February 8, 1859, and is the same as the Ohio statute, except that the recovery is limited to ten thousand dollars instead of five, and the words "with reference to the pecuniary injury resulting from such death to the wife and next of kin to such person deceased," immediately preceding the word " provided, are omitted."

The Pennsylvania statute was passed April 15, 1851, "that whenever death shall be occasioned by unlawful violence or negligence, and no suit for damages be brought by the party injured during his or her life, the widow of such deceased, or, if there be no widow, the personal representatives, may maintain an action for and recover damages for the death thus occasioned." Dunlop's Laws of Penn. (1700-1853) 1145.

"Connecticut statute, act of 1848, is as follows, viz.: Actions for injury to the person, whether such injury result in death or not, shall survive to the executor or administrator, provided not more than one year elapse between the injury and death, and provided also the cause of action shall have accrued subsequently to June 27, 1848."

But in the case of *Blake* v. *The Midland Railway Co.* (83 E. C. L. 110, *supra*), it is said, that, "It will be evident, that this act does not transfer this right of action to his representative, but gives to the representative à totally new right of action on different principles." When we look to the language of the act itself, we find a very satisfactory basis for this view. By the second section of the act (9 & 10 Vict. ch. 93) it will be seen, that the right of action is not given to the personal representative for the benefit of the estate, but the action is "for the benefit of the wife, husband, parent and child," and the "executor or administrator of the party deceased, is a mere nominal party, who sues for the benefit of the parties named in the act, and who are severally to have damages proportioned to the injury resulting to each."

To illustrate the application of the English act. Suppose the victim of the wrongful or negligent act of the defendant left a wife, parent and child, who were each entitled to an annuity, in different amounts, dependent upon the life of the deceased. Now, the recovery would be in the name of the executor or administrator, but it would fix the amount going to each, and it would be proportioned to the amount of the respective annuities. The damages suffered by the estate of the deceased would have nothing to do with the amount of recovery. The measure of the damages would be the pecuniary "injury resulting from such death to the parties respectively for whom and for whose benefit such action was brought."

Not so, under our statute (Rev. § 4111, *supra*), for it gives the action "in favor of the estate of the deceased, and the sum recovered shall be disposed of in the same manner as though the action was brought for a claim founded on contract;" except in certain cases it is exempt from liability for debts of the deceased. Now, it is tolerably

clear that under our statute no recovery could be had for an annuity to the wife or child for the life of the deceased, but only for " the injury " to " the estate of the deceased."

Having in view the precise language and purpose of the English act, it is not strange that in the case of *Pyne* v. *The G. N. Railway Co.*, 116 E. C. L. 396, when the counsel quoted the language of POLLOCK, Ch. B., in *Gilland* v. *The L. & Y. Railway Co.* _(supra)_, that learned judge interrupted him with the remark that " I am not now prepared to say, that what is there imputed to me is correct law, namely, that the statute enables the family to recover that which the deceased would himself have sued for, had the accident not terminated fatally; probably the case of a tenant for life of a large landed property was not within my contemplation. I agree, however, in the doctrine, that the damages must be given for pecuniary loss alone." The precise question before the court in the case last cited, and in which POLLOCK, Ch. B., made the foregoing remark, was whether the widow and children of the deceased had such a pecuniary interest in his life as would entitle the executor to maintain the action.

The distinction between the statutes of New York, Pennsylvania, and others found in our note will be readily seen by their reading.

It is proper for me here to state, that what is said in the first paragraph of the opinion of this court in *Donaldson, Admr.*, v. *The M. & M. Railroad Co.*, 18 Iowa, 280, as to the right to maintain any action under our statute which could be maintained under the English, New York, or other statutes, has reference as is clearly apparent from the language itself, to the character of the act producing the death; that is, that the " wrongful act " of our statute was used to express the same idea as the " wrongful act, neglect or default " of the other statutes.

The fact that our statute gives the right of action to

the estate of the deceased, and not to individuals or classes, as do the English and Pennsylvania statutes, adds much to the basis of my view, that it simply intended to remove the unjust and odious common law theory, that, where a wrongful act produced death the civil right was absorbed or lost in the public wrong; in other words, to declare, that the magnitude and fatal consequences of the wrongful act should not afford immunity to any extent to the wrong-doer.

The death in this case was not produced till ten minutes, more or less, after the wrongful act. During this time the right of action existed in the victim of the wrong. Where the right of action once attaches the statute of limitation begins to run. It is the right of action, which fixes the time at which the statute begins, and not the knowledge of the party as to such right of action, nor the physical ability to bring the action at that moment. When the wrongful act is done, action, in the language of Mr. Greenleaf (*supra*), may be "instantly maintained," and from that "instant" the statute begins to run. I think a legal and complete right of action accrued to the deceased in her life-time, and that such right, upon her death, passed to her personal representative, and that such representative had, under our statute, two years from the wrongful act in which to bring his suit, and not having brought it within that time, it is barred and he cannot recover. It will be seen by reference to the statutes quoted in the note, that actions thereunder are barred after two years from the death, regardless of when an administrator is appointed.

WRIGHT, J., without committing himself to any of the reasoning of the foregoing, and without denying that, if the deceased had survived the wrongful act for days instead of minutes, the statute might have begun to run, holds, that the death in this case comes within what is

generally rightfully and legally understood as an "instantaneous death," and that therefore no action did accrue to the deceased in her life-time, and that the statute of limitation did not then begin to run.

DILLON, Ch. J., is inclined to the opinion, that our statute creates and gives a right of action for the injury resulting from the death, and that, regardless of the time between the wrongful act and the death, and as a consequence, that the statute did not begin to run until the administrator was appointed, and this action is not barred; but without fully committing himself to this view, he holds, that in this case the interval of time between the injury and the death was so brief as that the statute did not begin to run in the life-time of the deceased, nor after her death, until the appointment of an administrator. He is of opinion, therefore, that the plea of the statute of limitation is not available to the defendants.

We are agreed in holding, that the provisions of our statute quoted *infra* do not affect the common law rules

4. —— statute construed: common law rules. of construing statutes of limitation. Those rules are: First, that the statute begins to run from the time the cause of action accrues; second, that if the statute once begins to run, no subsequent disability will suspend it, unless the statute itself provide therefor; and, third, that before a cause of action accrues or the statute can begin to run, there must exist a cause of action and a person authorized to prosecute it, as, for instance, where a cause of action accrues to the estate of a deceased person, the statute will not commence to run until there is a personal representative in whose name it may be prosecuted. Our statute, relied upon to take this case out of the operation of the last rule, is as follows: "SEC. 2748 (1667). If the person entitled to a cause of action die within one year next previous to the expiration of the limitation above provided

for, the limitation above mentioned shall not apply until one year after such death." We agree that this section does not affect the rules of construction as applied to this case.

The holding of the District Court that this cause of action was not barred by the statute of limitation is, therefore, affirmed.

II. The second point made by appellant's counsel is, that the person in charge of the skiff was not the servant or employee of the defendant so as to render the defendant liable for his acts or negligence.

5. NEW TRIAL: conflicting evidence.

This is a mixed question of law and fact. The evidence in relation to it was to a considerable extent conflicting, and much of it was made up of circumstances. As a question of fact, it was not only legitimately but peculiarly within the province of the jury to determine. The court having given the law properly to the jury, so far as it bears upon this point, their verdict becomes binding upon us and conclusive of the question.; although, for myself, I confess that I see no sufficient reason for refusing instructions numbers one and two, asked by defendant upon this subject, and would have been better satisfied if they had been given.

III. The third and main point relied upon by the appellant's counsel is, that the conduct of the deceased contributed directly to the accident and her consequent death. This is the fact proposition upon which the appellant relies. If it is true, as claimed by them, that the conduct of the deceased did contribute directly to the accident and her consequent death, then, in my opinion, the plaintiff cannot recover. Whether her conduct did so contribute to the accident, was a question of fact for the jury to find, and upon which there was conflicting, if not irreconcilable, testimony. It becomes necessary to examine the instructions

6. NEGLIGENCE: torts: mutual negligence.

Sherman v. The Western Stage Company.

or law, as given, and refused to be given, to the jury, by the court, upon this question. The case is an important one, both in its principles and magnitude of amount involved; and, since every part of the instructions has undergone elaborate criticism and defense in the argument of the case, I give them entire, as they are found in the transcript, in the form of a note,* in order to save space in the reports.

---

* IN CHIEF BY THE COURT: "Gentlemen of the jury: Without giving a statement in full of the claim made by plaintiff, and the defense thereto, I will endeavor to give you the rules of law as applicable to the material questions in the case and refer you to the petition and answer, which you will have with you during your retirement, and which you will consider in connection with these instructions.

2. The defendant is sued as an incorporation, and the answer admits that it is a corporation; you will therefore not stop to consider the question.

3. The defendant also admits, that at the time of the alleged accident it was running a line of coaches and vehicles for the transportation of freight and passengers over the route from Des Moines, in Polk county, through Boone county to Fort Dodge, in the county of Webster, for a compensation.

4. Defendant also admits, that the said Terzah Sherman traveled on said defendant's coaches on the trip in question, but alleges, that she traveled on said trip free and without any cost or charge whatever.

5. If you find from the evidence that the said Terzah Sherman was traveling on said trip as a passenger, and there is no evidence that she was traveling free, the right of her estate for damages in this case, if entitled to any, is the same as though it were affirmatively shown, that she paid, or was to pay, her passage.

6. The defendant alleges and claims, that the alleged cause of action did not accrue within two years before the commencement of this action, but that it accrued, if at all, about four years before such commencement, and that the alleged claim of plaintiff is barred by the statute of limitations. If you find from the testimony, that the said Terzah Sherman perished immediately at the time of the accident, and that no letters of administration were granted and issued upon her estate until within two years next preceding the commencement of this action, then this action is not barred by the statute of limitations.

7. The defendant denies that it was, as such company, or otherwise, at the time of the alleged accident, engaged in running a boat or boats on or over the route in question.

8. If you find from the evidence, that the defendant was running a line of vehicles for carrying passengers throughout the whole route from Des Moines to Fort Dodge, and that said route crossed the Boone river at the place where the accident occurred, the defendant was bound by their contract as carriers to transport their passengers over said river as over other

Sherman v. The Western Stage Company.

The refusal to give the same were severally and duly excepted to by the defendant.

It has been decided by this court, "that a plaintiff cannot recover for an injury resulting from the negligence of the defendant, if, notwithstanding such negli-

parts of said route, and if the evidence shows you, that at times when said stream could not be crossed by driving their coaches and vehicles through the same, the defendant had their passengers taken over in a boat or skiff of Jacques, and paid him for his services in that behalf, or whether they paid him or not, then the person who rowed or managed the boat was the agent and servant of the defendant for the purpose of this action, and the defendant is bound for his want of skill and negligence, if any, the same as if in the regular employ of defendant; and if the boat or skiff was thus used, the defendant is liable for its want of capacity and unfitness, if any, to the same extent as though defendant owned the skiff or boat.

9. If you find from the evidence, that the young man, Jacques, undertook to transport the passengers over the river in the skiff for the defendant, as explained in the last above instruction, the defendant, its agents and servants were bound to exert the highest diligence, the utmost care and vigilance to secure the safety of deceased, and you will hold the defendant responsible for the slightest negligence.

10. If the defendant conveyed passengers throughout the whole line as aforesaid, it was bound to provide a safe and secure method of transportation throughout the whole distance, and nothing can exempt it from this responsibility except the existence of some concealed defect, which no reasonable degree of human skill and foresight could guard against; and if it appears to you from the evidence, that the said Terzah Sherman's death was caused by the smallness or overloading of the skiff, or the unskillfulness of the young man that rowed the boat, then a strong presumption of negligence arises. If you find that the company had its passengers transported over the river, as aforesaid, the defendant was bound to see that the boat and all its apparatus and appointments were safe and sufficient, the rower skillful and experienced, and that every thing appertaining thereto, was in as perfect order as the utmost vigilance, care and skill could make it.

11. The negligence of the stage drivers or the person directing and managing the boat, is the negligence of the defendant itself; and if the fact be proved, that this life was lost on the line of the defendant while being carried as a passenger by the defendant, it is sufficient *prima facie* to establish the liability of the defendant, unless explained and rebutted by the attendant circumstances; but this *prima facie* liability, if any, may be rebutted by evidence, that the defendant was not negligent and careless within the rule above stated, and if you find from the evidence, that the defendant's servants and agents did use the utmost care and skill, and that said boat was in all respects safe and fit for the purposes of crossing said stream with passengers and was not overloaded, and that the accident did not occur through any negligence whatever of defendant's agents or servants, then the defendant is not liable, and your verdict will be accordingly.

Sherman v. The Western Stage Company.

gence he might have avoided the injury by the exercise of care and prudence on his part, or, if his own want of such care and prudence, or that of the party injured, in any way contributed directly to the injury." Or, in other words, " where there has been mutual negligence,

12. It is insisted by the defendant, that the intestate's life was lost by her own negligence; and if you find that Jacques' son was the agent of the defendant, as explained in the foregoing instructions, then, although the defendant may have been guilty of negligence, the plaintiff cannot recover in this action, if the deceased so far contributed to the accident by the want of ordinary care, that but for the want of such ordinary care on her part the accident would not have happened. The rule is, that she must have exercised ordinary care while crossing the river in the skiff; that she should conduct herself as a woman of ordinary care and prudence usually conducts herself in like circumstances. The law did not require that she should use extreme care and caution and vigilance more than women of average prudence exercise in such cases. If you find there was sudden and impending danger, that might excuse error of judgment or failure in coolness and self-possession. If you find from the evidence, that the defendant's driver, Clarkey, directed her to take her seat on the trunk, or if you find, that she was not required by any one to take her seat elsewhere, or if no order or direction was given to her as to her seat, and a woman of ordinary prudence would have seated herself as she did, then, if the accident did occur or was contributed to by her being seated on the trunk, then you cannot fairly presume, that her act in taking her seat was negligence or want of ordinary care on her part, and if, being thus seated, her movement to one side of the skiff was involuntary, and could not reasonably have been prevented by her, then you cannot fairly infer, that that act was a want of ordinary care on her part.

On the other hand, if you believe from the testimony, that the person in charge of the skiff at the time of the injury complained of, at the point of time when the deceased got into the skiff, requested her to take a seat low down in the boat, and that there was a seat there for her to take, and she refused or neglected to do so, but seated herself on top of a high trunk with her child in her arms, and when the boat in its passage over the river struck the current, she moved or got to one side of the boat, and that act caused the boat to dip the water, and finally to go down, so that she floated out into the stream and was drowned; her disobedience of the direction of Jacques to take the seat that he directed (if he did direct her), and her movements from one side of the boat to the other, then these facts, if you believe they have been proved, should be considered by you in determining the question of negligence by the deceased; and if you are satisfied that such conduct and action on the part of the deceased caused the accident, and was the occasion of the boat dipping and filling with water, and producing the injury, the plaintiff cannot recover.

13. You are the sole judges of the facts and the weight of evidence, and if you believe, from all the facts and circumstances disclosed by the testimony, that the plaintiff should recover, a material inquiry will be what is the true rule for the measure of damages.

and the negligence of each party was the proximate cause of the injury, no action whatever can be sustained." *Haley* v. *The C. & N. W. Railway Co.*, 21 Iowa, 15; see, also, *The State of Maryland, for use, etc.*, v. *The B. & O. Railroad Co.*, and the note thereto, and authorities cited

14. If you find for the plaintiff, you will find such damages as her estate suffered in a pecuniary way by her death; you should not allow any thing on account of the pain, mental anguish and suffering of the deceased at the time of her death, or for the grief and distress of her friends on account of her death or for the loss of her society; but in making your estimate, it is proper for you to take into consideration the occupation of the deceased, her annual earnings, her health, age, habits, family and estate, and taking all these facts into consideration, give such damages as in your judgment will compensate her estate; and you are not limited to the loss sustained at the time of her decease, nor to such losses as have accrued up to this time, but you should also include prospective losses, provided they are such as you believe from the evidence will fairly and reasonably result to the next of kin from her death; and it is proper for you in this connection to take into consideration the probable length of life of deceased if she had not been drowned by the accident, and you are not to make any deduction for the reason that her husband has again married. In short, you are to take all the facts and circumstances disclosed by the testimony, and give such damages as will cover the pecuniary loss, such as in your sound judgment satisfies you have and would hereafter naturally and proximately result from her death.

15. The plaintiff insists that he is entitled to exemplary damages. If you find from the evidence that the plaintiff should recover; that the drivers, Clarkey and Pennypacker, were at and before the accident addicted to drunkenness, and you further find that the managing agent of the defendant, who had authority to discharge the drivers, knew of the drunken habits of said drivers before the accident, and you further find that they were persent at said accident and were drunk at that time, and that by reason of their drunkenness the deceased was drowned, you are then justified in giving exemplary damages; but if you do not find all these facts to be true, you will confine yourself to the pecuniary loss aforesaid.

16. Exemplary damages are damages over and above the loss sustained, and are intended for the double purpose of punishing the defendant and as an example to others to abstain from like violations of law.

17. You should decide this case precisely the same as though the controversy was between two individals; stage companies being held to no more strict diligence than a private individual engaged in the carrying of passengers for hire; and the mere fact that defendant is a stage company will not authorize or justify you in requiring greater or other proof in its defense than if the suit were between private individuals.

The court then gave to the jury the following instructions at the request of the plaintiff, to wit:

1. The defendant having admitted, that it was a common carrier (for a reward) of passengers in its coaches at the date in question, and the defend-

Sherman v. The Western Stage Company.

by Judge REDFIELD in May No., 1866, vol. 5, U. S. Am. Law Reg. p. 397; see also *Donaldson* v. *The M. & M. Railroad Co.*, 18 Iowa, 280; *McAunich* v. *The M. & M. Railroad Co.*, 20 id. 338; Redfield on Railways, 330 *et seq.* In the case last cited, it is stated " as a general

ant having affirmatively averred that the deceased paid no passage money, if it shall appear to you that the deceased was an ordinary passenger, taking passage on the usual terms and conditions, then that makes a *prima facie* case for plaintiff and throws the burden of proof upon the defendant to show that no fare was paid.

2. It is not lawful for this jury if they find for the plaintiff to cast lots for the amount of their verdict, and agree to be bound by the result; the law does not favor such a method of arriving at a verdict.

3. Nor is it lawful for each juror to mark the sum he himself favors, and divide the sum of such verdict by the number of jurors and agree to be bound by the result.

4. By this it is simply intended to instruct you not to agree beforehand to be bound by a result not definitely ascertained; if you see fit to experiment and afterward decide, it is not illegal so to do.

The giving of the foregoing instructions were each properly excepted to by the defendant at the time.

The court then gave to the jury the following instructions at the request of the defendant, to wit:

1. The gist, basis and foundation of this action is, the negligence or malfeasance of the defendants or their servants, and unless the jury find that the negligence or breach of duty complained of was committed by the defendants or their servants, the action cannot be maintained.

2. That the number and circumstances of the next of kin of the plaintiff's intestate, or of the distributions of her estate under the law, cannot be considered or made an element in the verdict of the jury.

The defendant asked the court to give to the jury the following instructions, which the court refused, to wit:

1. If the jury find that the defendants were the proprietors of a line of stage coaches over the route from Des Moines to Fort Dodge, and that intestate took passage in said coaches from Des Moines to Fort Dodge, and that on her arrival at Boone river, she undertook and attempted to cross said stream in a skiff, owned and run as a ferry by one Isaac Jacques, managed by himself or those he placed in charge thereof, the said Jacques having independent control of the same, and the said defendant having no interest therein, and no control over the persons using and running the same, and by the carelessness of the persons in charge of the skiff the injury complained of happened to plaintiff's intestate, such person having charge of the said skiff was not the servant of the defendant, and they are not liable for his acts and omissions.

2. That if the jury find from the evidence, that at the time of the injury complained of, one Isaac Jacques was the owner of the skiff-ferry across Boone river, and used it for ferrying indiscriminately stage passengers and other passengers and persons who desired to cross the stream, and run it himself, or employed persons to run it for him, and had the sole and inde-

rule of law, that no one can recover for an injury of which his own negligence was in whole or in part the proximate cause."

The seventh instruction, asked by the defendant and refused by the court, contained this general rule of law in

pendent control thereof, and that the defendants had no interest therein, and no charge of, or control over the same, nor over the son of the said Isaac Jacques who was running the same at the time of the injury to plaintiff's intestate complained of, then the person whose negligence occasioned the injury was not the servant of the defendants, and they are not liable for his negligence or breach of duty.

3. That in cases of tort, the statute of limitations begins to run from the moment of the act or omission which causes the injury, and not from the time of the damage resulting therefrom; and if the intestate of plaintiff was not instantaneously killed, but survived the upsetting of the boat for a period of a few minutes only, then the cause of action was complete before her death, and the statutes of limitations began to run from the time of the act or negligence by which the skiff was overset, and in the life-time of the intestate; and, when the statute once begins to run, it is not suspended by any subsequent disability, but continues to run until the cause of action is barred.

4. In determining the question as to the liability of defendants for the injury occasioned by the upsetting of the skiff, the jury will consider whether the ferry and skiff were under the direction and control of the defendants or of Isaac Jacques, and whether said Isaac Jacques or the defendant employed the said Francis Jacques; and if the jury find that the said Isaac Jacques was the owner of the said ferry, and run the same as his own, and had control thereof independent of the defendants, and placed the said Francis Jacques in charge thereof, without any control of the defendants over him, and the injury to plaintiff's intestate happened through the carelessness and negligence of said Francis Jacques, then the defendants are not liable for any negligence of said Francis Jacques, by which the boat was overset, and the intestate thereby injured and drowned.

5. Even if the jury find, that the Boone river might have been forded at the time of the injury to the plaintiff's intestate complained of, and defendants neglected to ford it, and yet the injury to her occurred and happened by and through the negligence of Francis Jaques, who undertook to ferry her across the stream in a skiff, and the said Francis Jacques was not the servant of the defendants, then the defendants are not liable in this action.

6. That this action is not based or maintainable upon the implied contract which the law raises to safely carry and convey plaintiff's intestate over the route from Des Moines to Fort Dodge, on her becoming a passenger in their coaches, but is based upon and can be maintained only for some omission, negligence or wrongful act of the defendants; and if the jury find, that the act of upsetting the boat, which produced the injury complained of, was not occasioned by the act or negligence of the defendants or their servants, but by the servants of another, then the defendants are not liable or responsible for the act which produced the injury.

Sherman v. The Western Stage Company.

plain, comprehensive and straightforward language, as follows: "That if the conduct or negligence of the plaintiff's intestate occasioned or contributed directly to the upsetting of the boat, by which the injury complained of resulted to her, the plaintiff cannot recover in

7. That if the conduct or negligence of the plaintiff's intestate occasioned or contributed directly to the upsetting of the boat by which the injury complained of resulted to her, the plaintiff cannot recover in this action.

8. That if, on arriving at Boone river on the day of the accident or injury complained of, the plaintiff's intestate undertook and attempted to cross the river where the injury occurred, in an unsafe and improper boat or skiff, not owned or run by the defendants, and overloaded by the persons running and having charge and control of the same, and under the charge and management of a person obviously too young and inexperienced to manage the boat, these facts may be considered by the jury in determining the question of negligence on the part of the intestate.

9. That in cases of carriers of passengers by stage coach over routes obstructed by streams and high water, and which have to be ferried, the implied contract which arises between them, the carrier and the passenger, is entered into and exists with reference to the high water and the modes provided for crossing the same.

10. If the jury find, that the plaintiff's intestate took passage in the stage coaches of the defendants, to be carried from Des Moines to Fort Dodge, over the route between these places on which defendants ran their coaches under the implied contract safely and securely to carry and convey, and when she arrived at Boone river crossing, on the said route over which defendants' coaches ran, the said river was so high that the passengers had to be ferried across, and on arriving at the stream, the driver of the defendants spoke to and employed one Jacques, who owned and run a skiff ferry across said river at that point, and had the entire management and independent control thereof, and of the persons running the same, to ferry or carry the passengers, including intestate, over the river, and the intestate got into the skiff to be ferried across, and in crossing, by reason of the negligence of the said Jacques' servant having the management of the skiff, the said skiff was upset and the injury complained of in this action thereby ensued to the intestate, the defendants are not liable for the negligence of the person in charge of the skiff by which the boat was upset and the injury occasioned.

11. That exemplary damages cannot be recovered against the defendants in this action or actions of this description brought by the administrator of an intestate; that the damages are measured by the pecuniary worth and value of the life or probable life of the intestate to her estate.

12. That upon the facts disclosed in this action and the law applicable thereto, the plaintiff in this action cannot recover punitive or exemplary damages.

13. That the evidence given by the plaintiff's witnesses tending to show, that there were sticks and poles on both sides of the Boone river near where the accident and injury complained of by plaintiff occurred, is immaterial, and the jury are instructed to disregard the same.

VOL. XXIV.—71

this action." See also the seventeenth instruction refused, as to mutual negligence, which clearly embodies the true and settled rule on that subject. There was

14. That all the evidence given by the plaintiff's witnesses showing or tending to show the habits of the drivers, Clarkey and Elisha Pennypacker, and that they drank whisky and were intoxicated on other days than the day of the accident or injury to plaintiff's intestate complained of, was and is immaterial and incompetent, and the jury are instructed to disregard the same.

15. That all the evidence given by the plaintiff's witnesses showing or tending to show, that Boone river was fordable at the time of the accident or injury to plaintiff's intestate complained of, is immaterial and incompetent, under the pleadings, and the jury are instructed to disregard the same.

16. That if the jury find, that the person in charge of the skiff at the time of the injury complained of, Francis Jaques, at the time plaintiff's intestate got into the skiff, and after, requested her to take a seat lower down in the boat and she refused or neglected to do so, but seated herself on the top of a high trunk with her child in her arms, and when the boat, in its passage over the river struck the current she moved or got from one side of the boat to the other and by so doing caused the boat to dip the water and finally to go down so that she floated out into the water and was drowned, her disobedince of the directions of Jacques to take the seat he directed, and her movements from one side of the boat to the other, should be considered by the jury in determining the question of negligence by the intestate; and if the jury are satisfied, that such conduct and actions on the part of the intestate caused the accident and was the occasion of the boat dipping and filling with water and producing the injury, then plaintiff cannot recover.

17. If the jury believe, from the evidence, that there has in this case been mutual negligence on the part of plaintiff's intestate and defendant, and the negligence of each party or of the plaintiff's intestate alone has been the proximate or immediate cause of the injury, the plaintiff cannot recover.

18. That in this case the burden of the proof is on the plaintiff and he must show affirmatively, by a preponderence of evidence, that the injury complained of happened through and by the negligence of the defendants or their servants and without fault or carelessness on the part of the intestate, Terzah Sherman, or he cannot recover.

19. That the jury cannot consider or make the fact, that the legal tender currency of the country is of a greater or less value in gold now than it was on the 24th day of April, 1862, an element in their verdict either to increase or diminish the amount of such verdict if they find for plaintiff.

20. If the jury believe, from the evidence, that the injury to the plaintiff's intestate occurred on the 24th day of April, 1862, and that the cause of action accrued and became perfect on that day, and that letters of administration on the intestate's estate were not granted nor applied for till March, 1866, and that no sufficient cause has been shown for such delay in taking out letters of administration, the cause of action was barred by the statute of limitations before the commencement of this suit, and the plaintiff cannot recover.

Sherman v. The Western Stage Company.

evidence before the jury, as shown by the transcript before us, upon which to base the instruction, and in my opinion it was a plain and palpable error to refuse to give it to the jury. It should have been given; and it will be seen by reference to the instructions, all of which are contained in our note, that no instruction was given embodying the same principle.

The only instruction in which approximation to this general rule is made, is the twelfth instruction in chief, at its close; the. closing sentence is as follows: "And if you are satisfied that such conduct and action on the part of the deceased caused the accident and was the occasion of.the boat dipping. and filling with water and producing the injury, then the plaintiff cannot recover." Leaving out of view for the present the previous portions of that twelfth instruction, which tend to aggravate rather than palliate the error embodied in its closing paragraph, let us see how nearly this approximates, or rather fails to approximate, the general rule as stated. It is sufficient to defeat a recovery under the rule, that the conduct of the plaintiff *contributed directly* to the injury. But under the instruction as given, in order to defeat a recovery, the jury must be "satisfied that such conduct and action on the part of the deceased *caused the accident*, and was the occasion of the" injury. The difference is too manifest to require illustration. A party may contribute directly to an injury without causing it; or, one may contribute to a result without being the occasion of it. The difference is just that between a part and the whole. The whole is greater than any part. The court, in effect, told the jury that if the plaintiff's intestate was the whole cause of the injury, then plaintiff could not recover. But refused to tell them that if she was in part the cause, the plaintiff could not recover. The latter is the true and general rule, and should have been given.

That the "greater includes the less," may be as true in law as in mathematics; but the difficulty in its application to this point in the instructions is, that by showing "the less," the defendant would be entitled to the verdict; whereas the court required the defendant to show "the greater." Of course, if it should appear that the plaintiff's intestate caused the injury, then plaintiff could not recover. The twelfth instruction was correct so far, and in its last paragraph embodied the sixteenth instruction as asked by defendant and refused; but the defendant also had the right, in my opinion, to have the general rule, as embodied in the seventh and seventeenth instructions, also given, and the refusal of these was error to defendants' prejudice.

One other part of the twelfth instruction in chief requires notice. It is the first part of it, where the jury are told that if they "find that Jacques' son was the agent of the defendant, as explained in the foregoing instructions, then, although the defendant may have been guilty of negligence, the plaintiff cannot recover in this action, if the deceased so far contributed to the accident by the want of ordinary care, that but for the want of such ordinary care on her part, the accident would not have happened." The substance of this in plain English is, that if the deceased so contributed to the accident, that but for her conduct it would not have happened; or, in other words, if she caused the accident, the plaintiff cannot recover. Of course, the plaintiff could not recover if his intestate caused the accident. But we have just seen that the general rule recognized and applied by all the courts, does not require, in order to defeat a recovery, that the deceased should have so contributed as to produce or cause the accident, but only that she should have contributed directly, not wholly, but partially — mutually with the defendant — to produce

it. In substance, then, the twelfth instruction begins and ends with directions to the jury that the plaintiff can recover, unless his intestate caused the accident and injury — a doctrine without foundation either in principle or precedent. The instruction is nearly three pages of manuscript, and consists much in an argument tending to show, that since deceased was a female, she might have involuntarily caused the accident without being liable to the charge of want of ordinary care.

I am aware that language not materially dissimilar to a portion of that contained in the first paragraph of the twelfth instruction, is found in the opinion of the court in the case of *Scott* v. *Dublin and Wicklow Railway Co.* (11 Ir. Com. Law, 377, cited and quoted in the case of *Donaldson* v. *The M. and M. R. R. Co.*, 18 Iowa, 280). The entire rule as given in 11 Irish Common Law, which, when taken together, is very different from the part of the one sentence, embraced in the instruction under consideration, was stated in 18 Iowa (*supra*) to have the merit of much fairness, whatever might be the difficulty in its application. The rule, however, was not approved or sanctioned in that case as sound law, or as capable of practical application, but only as having the merit of abstract fairness. The rule is as follows: "Nor can he (plaintiff) recover, notwithstanding there is negligence on the part of the defendant, if he has so far contributed to the accident by the want of ordinary care, that but for that the accident would not have happened; but though the plaintiff has so contributed to the accident, he is not disentitled to recover, if the defendant might, by ordinary care, have avoided the consequences of the plaintiff's neglect; and when, but for plaintiff's negligence at the time, he might have escaped the consequences of the defendant's negligence, he cannot recover." This last part of the rule, which might have afforded

in this case an antidote to the bane of the first part, is entirely omitted from the instruction under consideration.

Apply the entire rule to this case and we have this: Plaintiff cannot recover notwithstanding the defendant had an insufficient boat and careless oarsman, if the deceased by her movements caused the boat to tip over; but, though deceased did cause the boat to tip over, plaintiff may yet recover, if the defendant by ordinary care might have prevented it or have rescued deceased from the water and saved her life; and if the deceased, by sitting still, might have passed over safely, even in the insufficient boat with the careless oarsman, then plaintiff cannot recover. From this it will be seen that the rule, although entire and one, nevertheless has three branches. The District Court embodied the first branch in the twelfth instruction and omitted the balance. Even if the rule itself had the approval of this court, it would afford no ground for sanctioning the first part given by itself, as in the instruction under consideration.

But the American and English rule as before and herein stated, in its practical application effectuates substantial justice, and with it we are content. The difficulty and uncertainty in the application of the rule as given in the Irish common law report, cited above, would probably outweigh any supposed advantage to result from its abstract or apparent fairness.

If the court had given to the jury the seventh and seventeenth instructions as asked by defendant, it would have covered the whole ground and left the questions of fact with the jury, with whom, in my view, they should all have been left in this case, as in every other. The instructions as given, do not go to the extent of the rule as heretofore settled by this court and recognized by all courts as a general rule.

Sherman v. The Western Stage Company.

* DILLON, Ch. J., and WRIGHT, J., do not concur in the foregoing views as to the instructions upon the subject of 7. —— para-mount negli-gence. negligence. In their view, and thereby by a majority of the court, it is *held:* That the general rule upon the subject of negligence as heretofore laid down by this court, and hereinbefore stated, is the true rule of law applicable to cases involving the question. But that in this case, the defendant by placing the plaintiff's intestate in the skiff, under the circumstances disclosed by the testimony, cannot avail itself of the imputed want of care, negligence or conduct on her part while in the skiff, to defeat a recovery for the injury resulting from the defendant's primary and paramount negligence in causing her to be put therein.

In the opinion of the majority, the instructions as given by the court, when taken as a whole and together, gave to the jury the correct rules of law as applicable to the facts of the case; and in this holding, the fact that the last part of the twelfth instruction as given by the court, is precisely the same as the sixteenth instruction as asked by defendant, has no little weight and bearing. And without laying down any general rule, the instructions as given in this case are affirmed on the ground of their applicability to the particular facts as developed by the testimony.

Upon the subject of the measure of damages, the District Court was, in the opinion of this court, led into an 8. DAMAGES: death from in-jury: action. error of phraseology at least, in the fourteenth instruction in chief, near the middle of the instruction; the court tells the jury that they " are not limited to the loss sustained at the time of her decease, nor to such losses as have occurred up to this time, but

---

* BECK, J., did not hear the arguments in the case, not being a member of the court at the time the cause was submitted, and hence took no part in its determination.

Sherman v. The Western Stage Company.

you should also include prospective losses, provided they are such as you believe from the evidence will *fairly and reasonably result to the next of kin* from her death." See also the second instruction asked by defendant and given. Under our statute the right of action is in favor of, and the damages recovered accrue *to the estate* of the deceased, and the rights of the *next of kin*, or the damages resulting to them are not to be considered or compensated for in this action. Under the English law, as well as under the amended Pennsylvania and New York statutes, the damages recovered accrue to certain next of kin to the deceased; and under those laws, the instruction would doubtless have been strictly correct. But under our statute it is not proper to direct the jury or permit them, in estimating damages, to take into consideration either past or prospective losses fairly or reasonably resulting to the next of kin, from the death of the deceased. It is simply the pecuniary loss to the estate. But by reference to the whole instruction it will be seen, that it has reference in its general scope and phraseology to the damage resulting to the estate, and that is its leading and controlling thought, notwithstanding the use of the words italicised above.

The District Court also instructed the jury, that if the defendant's drivers were drunken men, and that fact was known to defendant, and their drunkenness caused the injury, then they would be justified in giving exemplary damages. (See instructions in chief No. 15 and 16, and No. 11 and 12, asked by defendant and refused.) In our view, it is not necessary for us to decide whether exemplary damages are, or not, within the scope and purpose of our statute giving this action; or whether it was intended to afford pecuniary compensation only, for the injury resulting to the estate from the death. We have not been directed by counsel to any case, nor

9. —— exemplary damages.

Sherman v. The Western Stage Company.

have we seen one in which exemplary damages have been awarded, in an action brought for the death, and none of the cases, so far as we have examined, directly and expressly hold, that such damages cannot be recovered. This opinion is already too much extended to allow us to do more than simply cite a few of the cases bearing upon the subject. *Canning* v. *Williamstown*, 1 Cush. 451; *Morse* v. *Auburn & Syracuse Railway Co.*, 10 Barb. 621; *Penn. Railway* v. *McCloskey*, 23 Penn. St. 526; *Oakland Railway Co.* v. *Fielding*, 48 id. 320; *North Penn. R. R. Co.* v. *Robinson*, 44 id. 175; *The State of Maryland for use, etc.* v. *The B. & O. R. R. Co.*, 5 Am. Law Reg. (N. S.) 397 (May, 1866); *Dalton* v. *South Eastern Railway Co.*, 4 C. B. (N. S.) 296; *Franklin* v. *South Eastern Railway Co.*, 3 H. & N. 211; *Blake* v. *Midland Railway Co.*, 18, 2 B. 93 (S. C., 83 E. C. L. & E. 93). See also Judge REDFIELD's note to the case of *The State of Maryland* v. *The B. & O. R. R. Co.*, 5 Am. Law Reg. (N. S.) 397; and see (*semi contra*) *The Penn. R. R.* v. *Lyebe*, 33 Penn. St. 330.

We do not deem it necessary to discuss the question of damages further; nor to decide whether exemplary dam-

10. — exces-ages may, or may not, be given in such an
sive damages:
remittitur. action as this, for we have determined, in view of what has already been said, and of all the circumstances of this case, and pursuant to an offer by plaintiff's counsel to remit any portion of the judgment deemed excessive, to require plaintiff to remit all of the judgment except five thousand dollars, and to accept a judgment now for five thousand dollars, or in default thereof, the judgment of the District Court will be reversed and cause remanded for trial *de novo*. In either event the plaintiff will pay the costs of this appeal.

Affirmed as modified.